THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENIO FLORES, Defendant-Appellant.

Fourth District   No. 4—91—0567

Opinion filed June 29, 1992.

Donald J. Casper, P.C., of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 26, 1991, the circuit court of McLean County entered judgment on a jury verdict finding defendant Eugenio Flores guilty of possession of more than 30 grams but less than 500 grams of cannabis (Ill. Rev. Stat. 1989, ch. 56½, par. 704(d)), but not guilty of possession with the intent to deliver cannabis (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d)). He was subsequently sentenced to 8 days' periodic confinement in the county jail, 30 months' probation, and a street-value fine of $830. Defendant appeals, contending the evidence was insufficient to support his conviction. In addition, defendant claims he received ineffective assistance of trial counsel, as shown by his counsel's failure to (1) file a motion to suppress the cannabis seized from under the hood of his automobile; (2) call the latent fingerprint examiner for the State crime laboratory to testify regarding fingerprint evidence; (3) make an opening statement; or (4) impeach the testimony of one of the State's key witnesses. We affirm.

Initially, we consider defendant's claim that the State failed to prove beyond a reasonable doubt he was in possession of the cannabis seized from under the hood of his automobile.

At trial State Trooper Layfield, the arresting officer, testified as follows: (1) on February 1, 1990, while on patrol with the "Valkyrie" team, a drug interdiction patrol, she initiated a traffic stop of a 1981 Oldsmobile automobile driven by defendant for speeding northbound on I-55; (2) there were two other male occupants in defendant's automobile; (3) when asked for a driver's license, defendant produced a Missouri traffic citation; (4) a State and national computer check indi-

cated defendant's driver's license had been suspended in California; (5) the two men in defendant's automobile were illegal aliens and could not speak English; (6) defendant was placed under arrest and transported to the McLean County building; (7) she also transported the other two men to the McLean County building until the United States Immigration and Naturalization Service (INS) could be notified; (8) defendant's automobile was towed by Jerry Brimmer's wrecker service because none of the occupants had a valid driver's license to drive the automobile, and defendant was unable to prove ownership; and (9) when defendant attempted to retake possession of the automobile on February 3, 1990, she arrested him for the present offense.

On cross-examination, Layfield testified as follows: (1) she made a check with a Federal bureau run by the United States Customs Service to determine whether any of the occupants of the automobile had committed any immigration violations; (2) she was told defendant was listed in the system for an unspecified immigration violation; (3) the INS told her not to "worry about it"; (4) at the scene of the traffic stop defendant gave her permission to search his automobile; (5) she only did a "basic" search of the inside of the car, and not the trunk because of the inclement weather; (6) she requested that the automobile be impounded for the vehicle inspection officer to determine ownership because "she had a problem with the ownership"; (7) after she transported defendant to the McLean County building, she went to Brimmer's home garage, where defendant's automobile was impounded, and searched the trunk and glove box because defendant told her "there was [sic] some papers on the vehicle in it"; (8) the garage was locked and Brimmer had to open it for her; and (9) she was not searching the automobile for illegal drugs.

In addition, Sergeant Shumaker, of the Illinois State Police, testified as follows: (1) he was working in the vehicle identification section when defendant's automobile had been towed to Brimmer's garage; (2) he was requested to "process" the automobile to determine ownership; (3) on February 2, 1990 (the morning after defendant's automobile was impounded), he went to Brimmer's garage; (4) when he got there the garage door was open, and Brimmer was sitting on steps nearby; (5) he first located the vehicle identification number in the left front window; (6) he then located the Federal sticker which also contained the vehicle identification number and is either attached to the left front door or left front door pillar; (7) after he checked those numbers, he released the hood latch from inside the automobile to check the body tag, which is located on the engine and which indicates the plant the automobile was produced at, the model and some-

times the production number; (8) as he raised the hood of the automobile, he observed a semi-clear plastic bag lying on the front wheel well on the left side of the automobile; and (9) he observed two containers wrapped in aluminum foil which contained stems, seeds, and plant material resembling cannabis.

Shumaker testified on cross-examination as follows: (1) at trial he identified fingerprint powder on the plastic bag he found in the left wheel well of the automobile; (2) their procedure is to check for fingerprints; (3) he did not wear rubber gloves when he picked up the plastic bag; (4) his fingerprints would probably be on the plastic bag; (5) the tinfoil was probably not checked for fingerprints; and (6) he ran a computer check through the State of California and on February 2, 1990, and July 1990, the license plates on defendant's automobile were registered to a Mr. Jesus Preciado in Escondido, California.

Jerry Brimmer testified, and essentially corroborated the testimony of Sergeant Shumaker regarding the search which led to finding the cannabis on the left front wheel well of defendant's automobile. In addition Brimmer testified as follows: (1) he towed defendant's automobile to his personal two-car garage because the police requested indoor storage; (2) no other automobile was located in the garage; (3) the garage was always locked, but he was not sure of whether the automobile was locked; (4) only he and his wife, Trooper Layfield and Sergeant Shumaker had access to the garage; and (5) he was present when Trooper Layfield and Sergeant Shumaker searched the automobile.

In addition, Denise Vaughn, a forensic scientist with the Illinois State Police, testified that one of the aluminum foil containers found in the plastic bag located in the left front wheel well of the automobile weighed 101.2 grams, the other container weighed 125 grams, and both packages contained cannabis.

Defendant was the principal witness for the defense and testified as follows: (1) he lived in St. Louis and was driving two individuals he had previously worked with to Chicago when he was stopped for speeding on I-55; (2) he did not know whether those individuals were illegal aliens; (3) he was not driving as fast as Trooper Layfield claimed and he believed she stopped him because the automobile had California license plates; (4) he did not know his driver's license was suspended; (5) in response to Trooper Layfield's request for proof of ownership, he showed her some "papers," and "that's how they put all the information in the papers that [he had] proof that said [he] had all those things"; (6) at the scene, Trooper Layfield asked him if she could search his automobile and she searched under the seats and the

trunk; (7) he gave her $100 for bond, and the driver of the tow truck gave him and his passengers a ride to a nearby gas station; (8) he was surprised the police found the cannabis, and he never saw it there when he had previously checked the water and oil under the hood; and (9) he never uses drugs.

To establish possession of the cannabis by defendant, the State must prove two elements: (1) defendant had knowledge of the presence of controlled substance; and (2) the controlled substance was in the defendant's " 'immediate and exclusive control.' " (*People v. Jackson* (1961), 23 Ill. 2d 360, 364, 178 N.E.2d 320, 322, quoting *People v. Matthews* (1959), 18 Ill. 2d 164, 170, 163 N.E.2d 469, 472.) Possession can be either actual, requiring an act of physical dominion over the controlled substance, or constructive, which can be inferred if the defendant had exclusive control over the premises where the controlled substance was found. (*People v. Evans* (1986), 143 Ill. App. 3d 236, 492 N.E.2d 1036.) Knowledge of the location of the controlled substance alone does not prove possession. However, because of the difficulty in proving knowledge, when actual or constructive possession is established, generally the element of knowledge can be inferred from the surrounding facts and circumstances. *Jackson*, 23 Ill. 2d at 365, 178 N.E.2d at 322.

Defendant maintains that, here, possession cannot be inferred when the only evidence connecting him to the cannabis was that he owned the automobile in which it was found, especially when no fingerprint evidence was presented. In particular, defendant contends the State failed to prove he had " 'immediate and exclusive' " control over the cannabis, or the automobile where the cannabis was found, because (1) no evidence was presented concerning whether the two men who occupied his automobile had knowledge of the cannabis; and (2) the automobile was beyond his control and custody and accessible by others for at least 18 hours before the cannabis was found. Defendant claims the instant case is similar to *People v. Boswell* (1974), 19 Ill. App. 3d 619, 312 N.E.2d 17, and *Jackson*, where convictions for possession of a controlled substance were reversed because the evidence failed to establish the defendant had exercised some control over the substance. In both of those cases the issue was whether the defendant had actual possession of the controlled substance.

In *Boswell*, a police officer, while initiating a traffic stop of an automobile, observed the front passenger door open and a package drop from the open door. The defendant had been sitting in the front passenger seat. In addition, the police heard the defendant say " 'that was stupid' " or " 'that was a dumb thing to do.' " (*Boswell*, 19 Ill.

App. 3d at 620, 312 N.E.2d at 18.) The package was later found to contain cannabis. Because the defendant was not actually observed throwing the package out of the door and a possibility existed that one of the other three passengers could have thrown the package out, the appellate court concluded the evidence was insufficient to establish that the defendant exercised exclusive or joint control over the cannabis.

Similarly, in *Jackson*, the defendant locked herself in the bathroom of her third-floor apartment after being informed by a narcotics agent that she was under arrest. The defendant was carrying a large handbag. After the defendant opened the bathroom door, the narcotics agent noted the bathroom window opened upon an airwell. He then located a package containing a controlled substance directly under the window among some debris. Seven other apartments had access to the same airwell. Furthermore, there was no fingerprint evidence presented by the State. The Illinois Supreme Court noted that the controlled substance was not found in an area under the exclusive possession of the defendant, and no evidence was offered regarding the other tenants who had access to the airwell. The Illinois Supreme Court concluded the evidence was insufficient to show the defendant had possession of the controlled substance.

■■ Unlike the foregoing cases where the State had to prove the defendant had actual physical control over the controlled substance, here, an inference of exclusive control by defendant over the cannabis can be established because defendant owned the automobile, and more importantly, because the cannabis was found in an area of the automobile to which only the owner ordinarily has access. The evidence at trial established that defendant had owned the automobile for several months prior to the traffic stop and was driving at the time of the stop. Defendant testified that he personally checked the water and oil levels under the hood. The jury knew there were two passengers in defendant's automobile at the time of the traffic stop, and could reasonably have concluded that the passengers would not have had access to that area of defendant's automobile. In any event, the requirement that defendant have immediate and exclusive control over the controlled substance, or the premises where the controlled substance was found, does not rule out joint control. *Boswell*, 19 Ill. App. 3d at 621, 312 N.E.2d at 19.

Additionally, the jury was aware that the automobile was towed and out of defendant's immediate and exclusive control for approximately 18 hours. However, the evidence also established that during that time the automobile was in a locked garage, and the only individ-

uals who had access to the automobile were Trooper Layfield, Sergeant Shumaker, Brimmer, and Brimmer's wife. The jury could reasonably have concluded that those individuals would not have placed the cannabis under the hood of defendant's automobile. Under the circumstances, the lack of fingerprint evidence would not necessarily raise a reasonable doubt. Once the jury concluded defendant was in constructive possession of the cannabis, defendant's knowledge of the presence of the cannabis could reasonably be inferred.

In determining whether the evidence in a criminal case is sufficient to support a verdict of guilt, we view the evidence in a light most favorable to the prosecution and determine whether, under that evidence, a rational trier of fact could have found that each essential element of the offense was proved beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We find the proof met that test here.

In addition, defendant claims that various omissions by his counsel at trial, individually or in combination, denied him effective assistance of counsel. We disagree for reasons that follow.

Allegations of ineffective assistance of counsel are evaluated according to a two-part test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under the *Strickland* test, the defendant must prove (1) "that despite a strong presumption of counsel's professional competence, counsel's allegedly unprofessional acts or omissions in fact were 'outside the wide range of professionally competent assistance,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Stewart* (1990), 141 Ill. 2d 107, 118, 565 N.E.2d 968, 973, *cert. denied* (1991), ___ U.S. ___, 116 L. Ed. 2d 126, 112 S. Ct. 162, quoting *Strickland*, 466 U.S. at 690, 694, 80 L. Ed. 2d at 695, 698, 104 S. Ct. at 2066, 2068.) The *Strickland* Court noted that if it is easier to decide a case on the ground of lack of sufficient prejudice, rather than having to decide whether counsel's representation was constitutionally deficient, a court should do so. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Defendant's first allegation of constitutionally deficient representation concerns his trial counsel's failure to file a motion to suppress the cannabis seized from his automobile. Defendant argues that there was substantial authority to support a motion to suppress, and his trial counsel's failure to make such a motion lacked any strategic advantage and prejudiced the outcome of the trial. Defendant acknowl-

edges the State Police had authority to search his automobile at the scene of the traffic stop based upon his consent, and also authority to tow the automobile because neither he nor his passengers possessed a valid driver's license. Defendant maintains that the search of his automobile the morning after it had been towed to Brimmer's garage in order to either inventory the contents or determine ownership was a pretext to search for illegal drugs, which would otherwise have been impermissible without a warrant.

The evidence at trial revealed that the search in question occurred on February 2, 1990, the morning after defendant was arrested for the traffic violations and the automobile had been towed to Brimmer's home garage. A basic search of the front and back seats of the automobile had been conducted by Trooper Layfield at the scene, and another search by Layfield of the glove box and trunk was conducted after the automobile had been impounded at Brimmer's garage. The search in question here was conducted by Sergeant Shumaker. As already stated Shumaker worked for the vehicle identification section and was also a member of the "Valkyrie" team. Testimony at trial indicated that Shumaker had a dog with him at the time of the search, and that the "Valkyrie" team owned a dog to sniff out drugs. There was no evidence of whether this dog with Shumaker was the "Valkyrie" team dog, or why the dog was with him.

The State acknowledges the search in question would not have been a permissible inventory search, but instead argues that the limited search of defendant's automobile without a warrant was permissible as a search to determine ownership. The State contends that regardless of Sergeant Shumaker's motive for bringing along a dog when gathering the identification information from the automobile, the cannabis would have in any event been discovered when conducting a permissible search under the hood for the body tag number for identification purposes. Consequently, the State maintains there was no proper basis for filing a motion to suppress the evidence seized from the permissible search.

The prevailing analysis by the United States Supreme Court is to "first [examine] the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." *Scott v. United States* (1978), 436 U.S. 128, 138, 56 L. Ed. 2d 168, 178, 98 S. Ct. 1717, 1723.

No Illinois case has been found which has directly considered the reasonableness of a warrantless search under the hood of an automobile to determine ownership. However, Professor LaFave discusses the permissibility of automobile searches to determine ownership in

section 7.4(d) of his treatise. (3 W. LaFave, Search & Seizure §7.4(d), at 120-21 (2d ed. 1987).) In particular, LaFave states as follows:

"Under a variety of circumstances, it is reasonable for the police to make a limited search of a vehicle in an effort to determine ownership. ***

\* \* \*

*** The better view is that if the driver has been given an opportunity to produce proof of registration but he is unable to do so, and even if he asserts that there is no such proof inside the car, the officer is not required to accept such an assertion at face value, at least when his 'previous conduct would *** cast doubt upon his veracity'; at that point, the officer may look for registration papers 'on the dashboard, sun visor and steering column' and, if not found in those places or seen in plain view, in 'the glove compartment,' all 'places where it may reasonably be found.' This is significant in that a search for this purpose may at least sometimes be more intrusive than would likely be permitted in an ordinary inventory of the contents." 3 W. LaFave, Search & Seizure §7.4(d), at 120-21 (2d ed. 1987), quoting *State v. Taras* (1972), 19 Ariz. App. 7, 10, 11, 504 P.2d 548, 551, 552.

Here, objectively viewed, Sergeant Shumaker's search under the hood of defendant's automobile for ownership identification purposes was reasonable. Warrantless searches are not *per se* unconstitutional, but may be justified so long as they are reasonable. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.) There was no evidence that a limited search of this kind was unnecessary or contrary to normal police procedure. Although defendant indicated he had some papers regarding ownership of the automobile at the time of the traffic stop, Trooper Layfield testified defendant had no proof of ownership. Sergeant Shumaker testified that on February 2, 1990, he ran a check on the license plates, and the plates were registered under someone else's name.

In addition, Sergeant Shumaker testified that the body tag number located on the engine provides helpful information regarding the ownership identification. There was no evidence Shumaker's search was not limited to parts of the automobile which would provide identification information. Consequently, regardless of any underlying motives, the search and seizure of the cannabis under the hood of defendant's automobile was permissible, and thus, defense counsel's failure to file a motion to suppress the evidence would not have likely changed the outcome of defendant's trial.

The instant case is distinguishable from *People v. Reincke* (1980), 84 Ill. App. 3d 222, 405 N.E.2d 430, where the appellate court affirmed the portion of the trial court's order granting that defendant's motion to suppress evidence seized from a warrantless search of his automobile under the pretext of an inventory search of an impounded automobile. The *Reincke* court concluded the search was for investigation purposes, rather than to inventory the contents of that defendant's automobile. The evidence at that trial indicated the State Police policy was to inventory the contents of the automobile at the scene, and not as done there, two hours after the automobile had been impounded. Unlike the instant case, the warrantless search of that defendant's automobile was objectively unreasonable there because the evidence indicated the search was contrary to police policy, and not permissible under the inventory search doctrine. Here the warrantless search of defendant's automobile was permissible to determine ownership.

In *Reincke*, the court wrote that "[a] crucial factor in determining the validity of an inventory search is whether the search is actually a pretext for concealing an investigatory motive." (*Reincke*, 84 Ill. App. 3d at 225, 405 N.E.2d at 432.) To the extent that *Reincke* stands for the proposition that an otherwise appropriate inventory search could be deemed unreasonable and inappropriate because the police officers had an investigatory motive when they conducted the inventory search, we decline to follow it. Such a holding is inconsistent with the directive of the United States Supreme Court in *Scott* that a challenged search should be examined "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (*Scott*, 436 U.S. at 138, 56 L. Ed. 2d at 178, 98 S. Ct. at 1723.) In other words, an otherwise lawful search cannot be rendered unlawful because of the motives of the police in conducting it.

In so holding, we find helpful and persuasive the following analysis from a recent decision of the Texas court of criminal appeals in *Garcia v. State* (Tex. Crim. App. 1992), 827 S.W.2d 937, 942, quoting *United States v. Causey* (5th Cir. 1987), 834 F.2d 1179, 1184 (*en banc*), wherein that court held that "['] where police officers are objectively doing what they are legally authorized to do ... the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted,[']" and explained that holding as follows:

> "[T]wo of the primary reasons why the objective approach clearly makes more sense, and is more reasonable in terms of application, than is an attempt to determine an officer's subjective reasons for a 'pretext' detention [are the following].

First, an objective evaluation of the facts and circumstances surrounding a stop or arrest comports with the federal exclusionary rule and its deterrence rationale. The exclusionary rule was designed to prevent unlawful police *conduct,* and our Fourth Amendment jurisprudence has evolved around this core concept. '[T]he reason lies in the purpose of [the exclusionary] rule: to deter *unlawful* actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which [police officers] acted is of no consequence.' [(*United States v. Causey* (5th Cir. 1987), 834 F.2d 1179, 1185.)] Expanding the exclusionary rule to cover pretext arrests

['[']would be defensible only if we felt it important to deter policemen from acting lawfully but with the plan—the attitude of mind—of going further and acting unlawfully if the lawful conduct produces insufficient results. We might wish that policemen would not act with impure plots in mind, but I do not believe that wish a sufficient basis for excluding, in the supposed service of the [F]ourth [A]mendment, probative evidence obtained by actions—if not thoughts—entirely in accord with the Fourth Amendment.[']

[Citation.]

It makes little sense to maintain the pretext arrest doctrine solely to deter the subjectively bad intentions of law enforcement personnel when these intentions do not ultimately manifest themselves in any objectively ascertainable Fourth Amendment violations. Thus, as long as the facts and circumstances show a valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth the subjective reasons for such detention.

Second, application of the subjective 'pretext arrest' doctrine espoused in *Amador-Gonzalez v. United States,* 391 F.2d 308 (5th Cir.1968), et al., presupposes the ability to successfully determine a police officer's state of mind at the time of the detention. But the subjective intent of a police officer is neither easily nor consistently ascertained by courts:

['S]urely the catch is not worth the trouble of the hunt when courts set out to bag the secret motivations of police in this context. A subjective purpose to do something that the applicable legal rules say there is sufficient objective cause to do can be fabricated all too easily and undetectably. Motivation is, in any event, a self-generating phenomenon: If a purpose to search for heroin can legally be accomplished only when ac-

companied by a purpose to search for a weapon, knowledgeable officers will seldom experience the first desire without a simultaneous onrush of the second.[']"

[Citation.] (Emphasis in original.) *Garcia,* 827 S.W.2d at 943-44.

Furthermore, the instant case is distinguishable from *People v. Brinson* (1980), 80 Ill. App. 3d 388, 399 N.E.2d 1010, where the appellate court held that, where the identification evidence was weak and there was evidence that defendant's confession was coerced, defense counsel's failure to file a motion to suppress the identification evidence and the confession constituted ineffective assistance of counsel. Here, unlike *Brinson,* the likelihood of the success of a motion to suppress the cannabis was remote.

Defendant also challenges his counsel's failure to call as a witness the State's forensic scientist who examined the fingerprints found on the plastic bag containing the cannabis. The report of the forensic scientist revealed 27 latent impressions suitable for comparison. Comparison of 15 of the 27 to defendant's fingerprints did not reveal any identifications. Palm prints of defendant would have been required for comparison of the remaining 12 prints. The State never took defendant's palm prints and did not call the forensic scientist to testify.

■ Defendant claims defense counsel's failure to call the forensic scientist or any other witness in an effort to introduce the evidence concerning the results of the fingerprint tests was ineffective representation when considered together with defense counsel's alleged other omission. We disagree. The jury was aware by Sergeant Shumaker's testimony that fingerprint powder was on the outside of the plastic bag which contained the cannabis, and that it was State Police policy to check for fingerprints. The forensic scientist who examined the content of the plant material found in the plastic bag testified she turned the exhibits over for fingerprint examination. In closing argument, defense counsel noted defendant was fingerprinted and that the State had the burden of proving his fingerprints were identified as those found on the plastic bag.

Failure to interview and call witnesses at trial, particularly when the witnesses are known to trial counsel and their testimony may be exonerating, may indicate actual incompetence. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Here, the testimony of the latent fingerprint examiner would not have been exonerating. He would not have been able to testify definitively that none of the latent prints found on the plastic bag matched defendant's fingerprints. Consequently, the defense counsel could reasonably have concluded as a matter of trial strategy that it was best to leave the jury to make the

inference that the State would have introduced fingerprint evidence if the results had been incriminating.

■ Defendant also maintains that his counsel's failure to make an opening statement at trial was constitutionally deficient. While ordinarily an opening statement is important in providing the jury with a clear understanding of the theory of the case, there can be strategic reasons for waiving the opening statement. Any evaluation of counsel's conduct cannot properly extend into areas involving the exercise of judgment, discretion or trial tactics. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 12, 473 N.E.2d 1270, 1275.) The defendant in the instant case did not speak English well and defense counsel could have reasonably concluded that the best strategy was to allow for flexibility. Defendant was the key witness for the defense, and variances between an opening statement and defendant's testimony would have been noticed by the jury. In any event, under the circumstances here, an opening statement would not likely have changed the outcome of the trial.

Last, defendant claims defense counsel's failure to impeach Trooper Layfield's testimony further exacerbated counsel's foregoing omissions. Defendant maintains that if counsel had properly impeached Layfield it may have tipped the scales in his favor. The record indicates that there was conflicting testimony regarding whether defendant had posted bond for the traffic arrest at the scene, or whether Trooper Layfield transported him and his two passengers to the McLean County building to post bond. Trooper Layfield testified that defendant was taken to the McLean County sheriff's office after his arrest and released from there after posting $100 bond. Defendant testified he posted bond at the scene and Jerry Brimmer gave him a ride to a nearby gas station.

Trooper Layfield's police report indicated that defendant was arrested for the traffic violations and that he posted bond and was taken to the "Union 76." Defense counsel did not use this police report to impeach Trooper Layfield's testimony. However, defense counsel presented the testimony of David Goldberg, chief deputy of the McLean County sheriff's department, who testified that there was no record of defendant being "booked" into the McLean County jail on February 1, 1990.

■ The subject matter of the impeachment here concerns an immaterial aspect of the case. If the police report had been used to prove a discrepancy with Trooper Layfield's trial testimony, the jury could reasonably have concluded Trooper Layfield made an honest mistake based on attempt to remember an event that took place more than one year before the trial. Accordingly, defense counsel's failure

to attempt to impeach Trooper Layfield with her police report would not likely have changed the outcome of the trial.

Based on the foregoing discussion, we conclude that none of the defendant's allegations of ineffective assistance of trial counsel prejudiced the outcome of his trial and he has therefore failed to meet the requirements set forth in *Strickland*.

We note in passing that much of defendant's argument regarding ineffective assistance of counsel concerns speculation about defendant's trial counsel's failure to take certain actions at the trial level that defendant's appellate counsel asserts should have been taken. Defendant argues that his trial counsel's omissions were due either to counsel's inability to understand the issues or his confusion on the law because, defendant claims, no competent counsel could fail to do the things at trial that defendant's trial counsel failed to do. However, as we consider defendant's arguments, we do not have the benefit of any explanation from defendant's trial counsel regarding these omissions. In *People v. Kunze* (1990), 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296, this court addressed another defendant's claim of ineffective assistance of counsel and wrote the following:

> "Where, as here, consideration of matters outside of the record is required in order to adjudicate the issues presented for review the defendant's contentions are more appropriately addressed in proceedings on a petition for post-conviction relief. (Ill. Rev. Stat. 1987, ch. 38, pars. 122—1 through 122—8.) We therefore decline to adjudicate in this direct appeal [defendant's] contentions concerning the alleged incompetence of [his] trial counsel. An adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney-client privilege no longer applies."

Although we have here adjudicated defendant's claim of ineffective assistance of counsel, we reaffirm our earlier holding in *Kunze* that, for the reasons stated therein, claims of this kind are better adjudicated in proceedings on a petition for post-conviction relief. We find further support for this view in *Mitchell*, where the court wrote the following:

> "Specifically, defendant contends that her trial counsel erred by failing to object in an appropriate and timely manner or to raise several readily apparent legal questions during trial. Initially, we note that any evaluation of counsel's conduct cannot properly extend into areas involving the exercise of judgment, discretion or trial tactics. Counsel is entitled to great deference

in this court's evaluation of his conduct." (*Mitchell*, 105 Ill. 2d at 12, 473 N.E.2d at 1275.)

Without any explanation from defendant's trial counsel on the record before us, it is extraordinarily difficult to conclude, as defendant now asks us to do, that defendant's trial counsel's trial level omissions do not constitute areas "involving the exercise of judgment, discretion or trial tactics," the evaluation of which we are prohibited from engaging in under *Mitchell*.

Accordingly, for the aforementioned reasons, we affirm.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.