THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MELVIN A. SHEPHERD, Defendant-Appellee.

Fourth District   No. 4—92—0559

Opinion filed March 11, 1993.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carey J. Luckman, of Pontiac, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In April 1992, the State charged defendant, Melvin A. Shepherd, with driving while under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501) and improper lane usage (Ill. Rev. Stat. 1991, ch. 95½, par. 11—709). Prior to trial, defendant moved to suppress evidence obtained when the police stopped defendant's truck. In June 1992, the trial court granted defendant's motion, and the State appeals.

We reverse.

## I. BACKGROUND

Sergeant Timothy Henson of the Dwight police department was the only witness to testify at the hearing on defendant's motion to suppress. He said that in the early morning hours of April 25, 1992, he and Officer Dolan of the Dwight police department received a call

about some unruly men at the Dwight Auto Truck Plaza. Henson and Dolan went there and spoke with Wanda Jacobs, a waitress at the truck stop who had called the police. She told them that one of the unruly men had left, while the other (defendant) remained in a booth in the restaurant.

Jacobs told Henson that she had approached defendant to ask him if he wanted a refill of coffee. Defendant responded that he did not want a cup of coffee, but he did want a "blow job." Defendant also started calling another waitress, "Hey, blondie; hey, blondie." Jacobs added that defendant and the other man did not threaten or touch anyone; they just behaved obnoxiously. When she had the dishwasher at the restaurant ask them to leave, the other man left, but defendant stayed. Jacobs then called the police.

As Jacobs spoke with Henson, defendant went to pay his check. Because defendant was leaving, Henson decided to have no contact with defendant at that point. Instead, Henson left the restaurant and parked nearby on the southbound entrance ramp to U.S. Route 66 in case any further problems arose.

Henson saw defendant leave the restaurant, get in and out of his pickup truck, reenter the restaurant, and reemerge a few minutes later with another man. They got into his truck, and defendant drove east on Route 17, which soon thereafter intersects U.S. Route 66.

Just before passing the southbound Route 66 entrance ramp on which Henson was parked, defendant made a quick, wide left turn onto the entrance ramp without signalling. Henson thought that defendant likely had almost passed the entrance ramp when he realized he wanted to turn there. After defendant drove past Henson's squad car on the entrance ramp, Henson followed him. Defendant stopped at the stop sign before entering Route 66, and then drove south on Route 66.

In that area, Route 66 has four lanes: two in each direction, separated by a median. As defendant drove south in the right lane on Route 66, Henson saw defendant's truck weave, crossing the white centerline and returning to the right lane three times: twice with just both left wheels, and the third time with one-third of the truck. A few hundred yards after defendant weaved for the third time, Henson activated the lights on his squad car and pulled over defendant's truck.

When Henson walked up to defendant's truck, Henson noticed the strong smell of alcoholic beverages emanating from the truck's passenger compartment. In addition, when he asked defendant for his driver's license and insurance card, Henson noticed the strong smell of alcoholic beverage on defendant's breath. Henson thus asked

defendant and the passenger to get out of the truck and walk to the rear of the truck. Henson noticed that defendant stumbled and used the truck to regain his balance along the way.

After noticing defendant's bloodshot eyes, Henson asked defendant to perform some field sobriety tests. Although defendant passed the first two tests, he could not pass the third test—the one-leg stand—despite several efforts to pass it. Henson then arrested defendant for DUI and issued him a citation.

After Henson testified, defendant's counsel argued in support of his motion that "the stop was a subterfuge. It was completely pretextual. Absolutely ridiculous." He also argued that Henson "laid [in wait] for [defendant]. He waited for them to get into the vehicle, and he wants to make DUI cases." In response, the prosecutor argued that Henson's observations of defendant's driving justified the stop.

In its ruling on defendant's motion, the trial court first noted that once Henson had stopped defendant, "there was enough evidence to indicate that the [d]efendant was probably intoxicated." However, the court stated that it regarded "whether [Henson] could stop the [truck] to begin with" as a very close question. The court then made the following comments:

"Short of probable cause, *** the only allowable justification [for stopping the truck] would be some sort of *Terry*-type stop, reasonable suspicion that crime was afoot.

Now, here there's not probable cause. The reason *** for stopping the car wasn't because [he] failed to show a turn signal. The reason wasn't because he committed improper lane usage. ***

Here, the reason [for stopping the vehicle] was [the] obnoxious behavior back at the restaurant, turning wide with no turn signal at an intersection[,] [a]nd once out on [Route] 66, *** having passed gently over the centerline three times and back[.] [I]n a normal case I would think this [evidence] would be enough under *Terry* to stop. I think an officer, given the time of day here, early morning hours, seeing peculiar driving, I think an officer would have a right and maybe even a duty to stop that vehicle and find out[: 'I]s the guy drunk, is the guy asleep, is there something wrong, or is he just a lousy driver.[']

Here[,] though, he had to know all that because he had just been with the fellow at the restaurant. So he [must have already known] whether the person was drunk or not; and if he was drunk, he wouldn't have let him get in the car. He would

have had to assume[, ']we didn't have a fellow falling asleep here.['] ***

I guess the way I look at it, maybe I'm looking at it wrong, [but] it can't be a *Terry* stop to find out what was going on because the officer knew what was going on. He just talked to the guy.

So here I don't think it can be reasonable suspicion that crime is afoot here because he knew all about the fellow having just been with him or talked to him briefly, [and] seen him there at [the] restaurant.

So here *** all I can look at is[:] is there probable cause to stop the guy for committing some offense? *Well, it wasn't for [failing to use his] turn signal because that incident had passed.* So here I guess I can't justify *** this stop." (Emphasis added.)

## II. ANALYSIS

When reviewing a trial court's findings of fact on a suppression motion, an appellate court will not reverse unless those findings are manifestly erroneous. (*People v. Brown* (1990), 136 Ill. 2d 116, 125, 554 N.E.2d 216, 220; *People v. Gorman* (1991), 207 Ill. App. 3d 461, 468, 565 N.E.2d 1349, 1353.) However, when neither the facts nor the credibility of the witnesses is contested, and an appellate court instead reviews only the trial court's legal conclusions on a suppression motion, the appellate court need not afford the trial court's decision deference and may instead review that decision *de novo*. *In re D.G.* (1991), 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649.

Initially, we question the trial court's factual finding that Henson must have known whether defendant was drunk because Henson talked briefly to defendant at the restaurant. Henson, the only witness to testify at the suppression hearing, did not say that he spoke to or even approached defendant at the restaurant. The court did not indicate that it did not believe Henson's testimony; instead, it apparently did not correctly remember that testimony. Because Henson's testimony shows that he never spoke to or interacted with defendant at the restaurant, the court had no basis to conclude that Henson knew if defendant was drunk before defendant left the restaurant.

However, we need not definitively determine whether this factual finding rises to the level of manifest error because—pursuant to our *de novo* review on matters of law—we hold that the trial court's legal conclusions were incorrect regardless of how the above factual issue would be resolved. Even if Henson had known that defendant

was drunk at the restaurant, this knowledge would have had nothing to do with the constitutionality of the traffic stop of defendant that Henson later made.

Henson testified that he observed defendant commit at least one (and perhaps several) minor traffic violations, and the trial court expressed no disbelief regarding that testimony (and we add that we see no reason why it should have). *At a minimum*, Henson saw defendant turn left without signalling, thereby violating section 11—804(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—804(b)). That observation, *without more*, sufficed to provide Henson with probable cause to stop defendant's car. *People v. Sorrells* (1991), 209 Ill. App. 3d 1064, 1069, 568 N.E.2d 497, 500.

We also emphasize that the delay between his witnessing this traffic violation and his pulling defendant over in no way vitiates the probable cause Henson possessed. The delay merely shows that Henson legitimately used discretion in not stopping defendant at Henson's first opportunity to do so. Section 107—2(1)(c) of the Code of Criminal Procedure of 1963 (Code) provides that a peace officer *may* arrest a person when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1991, ch. 38, par. 107—2(1)(c).) Thus, when a peace officer has reasonable grounds to believe a person has committed a crime, this section clearly gives that officer discretion to arrest that person immediately, later, or perhaps never.

Certainly, this discretion does not expire within a few minutes of witnessing the offense occur. Indeed, Professor LaFave has noted that delay affects only probable cause to search, not probable cause to arrest:

> "The most obvious difference between probable cause to arrest and probable cause to search is that the former is concerned with historical facts while the latter is concerned with facts relating to a presently existing condition. If a police officer is summoned to a crime scene and is told by the victim and several witnesses that an armed robbery has occurred and that a particular person known to them by name committed it, there then exists probable cause to arrest that person. Assuming no contrary facts later come to light, this probable cause will continue to exist for an indefinite period." (2 W. LaFave, Search & Seizure §3.7(a), at 75 (2d ed. 1987).)

In addition, our supreme court has held that pre-arrest delay raises no constitutional concerns unless the defendant can clearly show that the delay caused actual and substantial prejudice to defendant's abil-

ity to present a defense. See *People v. Lawson* (1977), 67 Ill. 2d 449, 457-59, 367 N.E.2d 1244, 1248 (no prejudice proved in mere self-serving assertions that delay caused problems in reconstructing the events at issue).

In the present case, Henson's election not to immediately pull defendant over had no impact on the constitutionality of his pulling defendant over a few minutes later. Accordingly, we hold that Officer Henson's probable cause to stop defendant for failing to signal before turning did not expire (nor even diminish) when he chose not to immediately stop defendant.

■ Defendant argues that Henson's stop for minor traffic violations constituted a mere "pretext" for investigating other, unrelated criminal activity. Indeed, the trial court's reference to the delay between Henson's witnessing defendant commit the traffic violation and Henson's eventual stop suggests that the court might have bought defendant's "mere pretext" argument.

However, this court has emphatically rejected the "pretextual" stop analysis on which defendant relies. (See *People v. Flores* (1992), 231 Ill. App. 3d 813, 823-25, 596 N.E.2d 1204, 1211-12, quoting *Garcia v. Texas* (Tex. Crim. App. 1992), 827 S.W.2d 937, 943-44.) When reviewing whether probable cause or reasonable suspicion to stop existed, a court should only evaluate whether specific, articulable facts support the stop, not whether the police officer held some other furtive or pretextual reason for the stop. See *People v. Williams* (1992), 233 Ill. App. 3d 1005, 1010, 599 N.E.2d 1033, 1036 ("permissible for police officers to arrest a suspect on a minor offense and conduct questioning on a more serious offense[;] and the arrest will not be deemed pretextual as long as the arrest on the minor offense is valid"); *People v. Perry* (1990), 204 Ill. App. 3d 782, 786, 562 N.E.2d 618, 621 (constitutionality of stop depends on "whether the stop is objectively reasonable, and, if so, it is not invalidated solely because the officer acted out of an improper or dual motivation").

The trial court's pretextual analysis suggests that an officer may not stop someone for a traffic offense—for which he does not normally stop someone—merely because that officer has information that leads him to believe that the person stopped may be involved in more serious criminal activity. We disagree. This analysis adds only irrelevant clutter when the court assesses whether the police had probable cause to make the arrest at issue. Further, this analysis would shift the court's attention to the difficult task of trying to determine—as defendant here argues—the "furtive state of mind" of the police officers involved. (See *Flores*, 231 Ill. App. 3d at 823-25, 596 N.E.2d at

1211-12, quoting *Garcia*, 827 S.W.2d at 943-44.) Last, this analysis amounts to attempted judicial micromanagement (in hindsight, of course) of what may well be the prudent exercise of police discretion, as demonstrated in this case.

After defendant left the restaurant, Henson saw him take a quick, wide turn without signalling. Henson described it as if defendant realized that he had almost passed where he wanted to turn and then made the turn just in time. Because an innocent explanation could be given for defendant's erratic turn, Henson, apparently using his discretion, decided to not stop defendant at that time. Nonetheless, Henson decided to follow defendant to see if anything else would occur to warrant stopping defendant to further investigate. If nothing occurred, the innocent explanation for the wide turn likely would have sufficed, and, as we earlier noted, section 107—2(1)(c) of the Code did *not* require Henson to stop defendant for the minor traffic violations that Henson saw defendant commit.

As Henson followed, defendant then weaved twice, but not severely. Only when defendant weaved a third time—this time crossing the white centerline with a third of his car—did Henson immediately pull defendant over. In his judgment—and it was *his* judgment call to make—only then did defendant exhibit enough erratic driving to warrant further investigation.

Completely contrary to defendant's pretextual argument, the record reveals that Henson gave defendant considerable leeway by not intervening at the restaurant, not pulling defendant over for making an erratic turn and failing to signal, and not pulling defendant over immediately for weaving twice into another lane. Only when the cumulative effect of defendant's driving caused Henson to suspect that defendant might be drunk did Henson choose to effectuate the probable cause *he already possessed* to pull defendant over for the minor traffic violations Henson saw defendant commit.

On this same point, we note that defense counsel at the suppression hearing asked the trial court "to take judicial notice of the remarkable lack of *** tickets [other than the DUI charge that Henson wrote.]" (We add that the prosecutor, not Henson, later added the improper lane usage charge.) Apparently, by his remarks, defense counsel was attempting to impeach Henson's testimony by showing that if he had *really* been serious about stopping defendant for various minor traffic violations, Henson would have ticketed defendant for those violations, in addition to the DUI charge. We find this argument singularly unpersuasive. Police officers and prosecutors frequently (and appropriately) abandon minor charges which were the justification for

an initial stop of a suspect when that stop reveals, as in this case, evidence to charge the suspect with a more serious offense. To hold otherwise would provide an incentive, if not a mandate, for police and prosecutors to unnecessarily clutter our already crowded court dockets.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's order granting defendant's motion to suppress, and we remand for further proceedings.

Reversed and remanded.

McCULLOUGH and KNECHT, JJ., concur.