7 September 1999

NO. 5-98-0027

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the 

                                    )  Circuit Court of

     Plaintiff-Appellant,          )  Randolph County.

                                     )

v.                                   )  No. 97-CF-161

                                     )

TOMMY M. MARTINEZ,                   )  Honorable

                                     )  Jerry D. Flynn,

     Defendant-Appellee.             )  Judge, presiding.

________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:  

Defendant, Tommy M. Martinez, was charged by information on September 10, 1997, with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)) and obstructing a peace officer (720 ILCS 5/31-1 (West 1996)).  On October 2, 1997, defendant filed a plea of not guilty and a motion to dismiss alleging that the arresting officer had no reasonable grounds to request that defendant stop his vehicle and no reasonable grounds to believe that defendant was committing or about to commit or had committed an offense.  On that same date, defendant also filed a motion to suppress all physical evidence and statements, utterances, reports of gestures, and responses by defendant during the detention following the allegedly illegal arrest.

On November 14, 1997, a hearing on the aforementioned motions was held, and testimony was elicited from the Randolph County deputy sheriff, Shannon Wolff.  Wolff testified that on September 9, 1997, at approximately 8:30 p.m., he requested a routine license plate check on a vehicle that he had observed.  Wolff stated that the dispatcher informed him that there was a possible warrant for the arrest of the registered owner of the vehicle, Gary Moore.  Wolff said that the vehicle pulled into the Poolside Motel and stopped.  Wolff then pulled his vehicle into the same lot behind Moore's vehicle.  When Wolff pulled into the lot, he turned his lights on and then turned them off.  All four occupants of the vehicle exited, and Wolff began to speak to the driver of the vehicle, Shannon Harris.  The passenger in the front seat was Moore, the owner of the vehicle, and the back-seat passengers were defendant and Willie Johnson.  When Wolff started talking to Harris and Moore regarding the warrant, defendant told Wolff that he had no reason to stop them and that he could not ask them questions.  Defendant told the others that they did not have to answer any questions that Wolff asked.  Defendant stood partially in front of Wolff and to the side at a "very close" distance.  Defendant actually stood in between Wolff and Harris and Moore.  Wolff stated that defendant's physical proximity caused him to be apprehensive about the security of his weapon.  Wolff testified that defendant was interfering with his questioning of Moore and Harris so much that he could not concentrate on the questioning because he had to pay such close attention to defendant because he was making him nervous.  Wolff stated that it was difficult to concentrate on his questioning because he was having to focus on defendant.  Wolff told defendant on at least three separate occasions to get back, to stop interfering, and to stay away from him and the people he was speaking with.  Defendant finally started walking toward the street.  Defendant was not arrested at the time that he walked away.  Daniel Hanna, another police officer on the scene, even asked Wolff if he wanted defendant to remain on the scene, and Wolff said "No."  Wolff then placed Moore in his squad car because of the warrant and called the dispatcher.  The dispatcher stated that there was an active warrant and that she was going to attempt to get confirmation from the issuing county.  While Wolff was waiting for the information from the dispatcher, he was also waiting for Harris's driver's information, which kept coming back as if no record was on file in the computer.  Harris claimed that he had a driver's license, so Wolff was attempting to obtain information from the dispatcher regarding Harris.  While Wolff remained in the squad car talking to Moore, defendant returned.  Wolff observed defendant talking to Officer Hanna.  Defendant told the others that they did not have to tell these "these mother f******" anything."  Wolff then got out of his vehicle and told defendant to leave.  Defendant continued to "go on with the mouth work," and at that point, defendant was placed under arrest for "interfering" and placed into custody.  Defendant was transported to the Sparta Police Department for booking.  At the police department, defendant's person was checked, and two rocks of crack cocaine were found in the sweatband of the hat that he was wearing. 

Hanna's testimony was virtually identical to Wolff's testimony.  

Prior to its ruling, the circuit court noted that there was nothing wrong with the initial investigatory stop of the vehicle, even though Wolff later discovered that the warrant was not valid.  The court also stated that defendant's verbal remarks were protected speech and did not constitute obstructing a peace officer.  The circuit court stated that it was a closer call on the issue of whether defendant actually placed himself between Wolff and the person that Wolff was attempting to speak to.  The court stated that it was "interesting" that defendant was not placed under arrest immediately after standing between Wolff and his subject but only upon returning to the scene after an earlier retreat.  The court also stated that "as a matter of law there was not obstructing a police officer."  Subsequent to the hearing on the aforementioned motions, an order was entered stating as follows:  "Defendant's motions are granted and any evidence or statements obtained from the defendant is [
sic
] suppressed."  The State filed a motion to reconsider on November 25, 1997.  On January 9, 1998, a hearing was held, and on January 12, 1998, the court denied the State's motion to reconsider.  On January 13, 1998, the State filed a notice of appeal and a certificate of impairment.

The State claims that since Wolff had reasonable grounds to believe that defendant had committed the offense of obstructing a peace officer, defendant's motion to suppress should not have been granted.  We agree.

Generally, when reviewing a trial court's findings of fact on a suppression motion, this court will not reverse unless those findings are manifestly erroneous.  See 
People v. Shepherd
, 242 Ill. App. 3d 24, 28, 610 N.E.2d 163, 166 (1993).  However, when neither the facts nor the credibility of the witnesses is contested and this court is reviewing only the trial court's legal conclusions on a suppression motion, this court need not afford the trial court's decision deference and may instead review that decision 
de novo
.  See 
Shepherd
, 242 Ill. App. 3d at 28, 610 N.E.2d at 166; see also 
People v. Robinson
, 299 Ill. App. 3d 426, 431, 701 N.E.2d 231, 236 (1998).

Defendant argues that in this case the trial court's decision on the motion to suppress should be upheld unless the record shows that the decision is contrary to the manifest weight of the evidence.  See 
People v. Industrial Salvage, Inc.
, 136 Ill. App. 3d 1068, 1070, 484 N.E.2d 322, 323 (1985).  We disagree.

In the instant case, it is clear that the testimony by Officers Wolff and Hanna regarding defendant's actions were uncontradicted; therefore, the facts of this case are not in dispute.  Moreover, the officers' credibility was not questioned.  The trial court ruled, 
as a matter of law
, that defendant's actions did not constitute obstructing a peace officer.  Hence, the standard of review in this case is 
de novo
.

After stating that the initial stop of the vehicle was appropriate, the trial court stated as follows:

"[T]he testimony of the police officers is supposedly that Mr. Martinez did two things.  Number one, he, as Officer Hanna said, continued to go on with the mouth work, end of quote, and the other part I suppose is some suggestion that he physically stood between the officer and the person that the officer was attempting to speak with.  I tend to agree that the verbal statements of the defendant are protected and would not constitute the verbal disturbance that is alleged in Count II.  I think that there are certain circumstances in which verbal statements could be sufficient.  I just don't find as a matter of law that what we have here arises to that.

I think that the closer call really is the issue of whether or not the defendant physically got himself between the officer and the person that the officer was attempting to speak with.  It's interesting here that apparently up to the time that Mr. Martinez left the scene he was not under arrest[,] and it was when he came back that he was placed under arrest.

Taking into account the totality of the circumstances, and I think that that's [
sic
] really what these cases are saying, that you really need to look at the circumstances as they existed at the scene in order to put what the supposed acts by the defendant and[--] you have to put them in some type of context, and I think some of these cases like the one where [
sic
] the State cites are cases in which you almost have a tendency to fear a riot and then someone coming on to the scene and doting the crowd on to obstruct the police investigation.

That simply is not the situation that we have here.  Taking into account the totality of the circumstances, I tend to agree with the defendant that as a matter of law there was not obstructing a peace officer.  So I am going to grant the motion to suppress."

Section 31-1(a) of the Criminal Code of 1961 (720 ILCS 5/31-1 (West 1996)) states as follows:

"(a) A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor."

Although none of the cases regarding obstruction of a peace officer are based on exactly the same set of facts that we have in this case, we nevertheless find them to be instructive.  In 
People v. Weathington
, 82 Ill.2d 183, 187, 411 N.E.2d 862, 864 (1980), the Illinois Supreme Court stated that mere argument is not enough to constitute obstructing a police officer.  In 
People v. Raby
, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968), the Illinois Supreme Court stated that to "obstruct" means "to be or come in the way of."  The court stated that "[g]iven a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action[] but proscribe only some physical act which imposes an obstacle which may 
impede, hinder, interrupt, prevent[,] or delay the performance of the officer's duties
, such as going limp, forcefully resisting arrest[,] or physically aiding a third party to avoid arrest."  (Emphasis added).  
Raby
, 40 Ill. 2d 392, 240 N.E.2d at 599.

In the instant case, the police officers' testimony that defendant stepped between Wolff and the men that he was attempting to question was uncontradicted.  The comments by the trial judge show that the court was not trying to determine whether defendant actually stood between Wolff and the others but whether defendant's standing in between the officers and the people that they were trying to question, in conjunction with "mouthing" to the deputy, constituted obstructing a peace officer.  This is precisely the issue that we have before us at this time.  It is clear from a review of the record that defendant's actions of stepping in between Wolff and the people that he was attempting to question actually impeded, hindered, interrupted, and delayed the performance of Wolff's duties.  As we previously stated, defendant actually stood in between Wolff and Harris and Moore while Wolff was trying to question them.  Wolff stated that defendant's physical proximity caused him to be apprehensive about the security of his weapon.  Wolff testified that defendant was interfering with his questioning of Moore and Harris so much that he could not concentrate on the questioning because he had to pay such close attention to defendant because he was making him nervous.  Wolff stated that it was difficult to concentrate on his questioning because he was having to focus on defendant.  Wolff told defendant on at least three separate occasions to get back, to stop interfering, and to stay away from [him] and the people he was speaking with.  Defendant finally left.  When defendant returned, Wolff observed defendant talking to Officer Hanna.  Defendant told the others that they did not have to tell these "these mother f******" anything."  Wolff then got out of his vehicle and told defendant to leave.  Defendant continued to "go on with the mouth work," and at that point, defendant was placed under arrest for interfering and placed into custody.  Hence, it is clear that Wolff had probable cause to believe that defendant had committed the offense of obstructing a peace officer and to arrest him for that offense.  We note that probable cause for reasonable grounds to arrest does not require evidence sufficient for a conviction.  See 
People v. Lippert
, 89 Ill. 2d 171, 178, 432 N.E.2d 605, 608 (1982).    

One of the most disturbing aspects of the trial court's statements is that the court found it to be "significant" that there was a delay between defendant's act of standing between Wolff and Moore and Harris and his eventual arrest.  It appears that the court implicitly found that probable cause to arrest is perishable and must be acted upon immediately.  We disagree.

In 
Shepherd
, 242 Ill. App. 3d at 28-29, 610 N.E.2d at 166, the arresting officer originally saw the defendant at a truck stop and was told by a waitress that his behavior was unruly and rude.  Defendant left the truck stop without having talked to the police officer.  The police officer also left and saw the defendant commit a traffic violation.  Shortly thereafter, the defendant committed another traffic violation.  The police officer then pulled the defendant over and charged him with driving under the influence.  The trial court determined that the police officer's failure to arrest the defendant immediately after the first infraction required that the defendant's motion to suppress be granted.  This court reversed, however, and stated that pursuant to section 107-2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 107-2 (now 725 ILCS 5/107-2 (West 1996))), an officer having reasonable grounds to arrest has discretion to perform that arrest immediately, later, or never.  

Since there was probable cause to arrest defendant, we reverse the circuit court's suppression order and remand this case for trial.

We also note that defendant raises a new issue in his brief.  Defendant claims that since the investigative stop was based upon a nonexistent warrant of arrest, the fruits of that stop, defendant's arrest, and the evidence secured by that arrest were properly quashed.  We disagree.

Defendant cannot complain about the violation of another's constitutional rights.  Fourth amendment rights are personal rights that may not be asserted vicariously.  See 
Alderman v. United States
,  394 U.S. 165, 174, 22 L. Ed. 2d 176, 89 S. Ct. 961, 966-67 (1969).  Hence, since defendant has no standing to contest Wolff's stop of Moore and Harris after they got out of the vehicle, we will not consider the issue of whether the stop of Moore and Harris was proper.  We also note that defendant was not detained and was free to leave at all times until he interfered with Wolff's investigation to such an extent that he was arrested.  Wolff even told Hanna that defendant was free to leave, and he did, in fact, leave for a small period of time.  

Since defendant was not being detained as the result of misinformation about an arrest warrant for Moore, his subsequent arrest for obstructing a peace officer was not the result of Moore's stop and did not concern a "stale" arrest warrant, as was the case in 
People v. Sullivan
, 243 Ill. App. 3d 830, 612 N.E.2d 1000 (1993), a decision that defendant relies so heavily on.

Hence, defendant has no standing to raise this issue.

In light of the foregoing considerations, we reverse the circuit court's suppression order and remand this case for trial.

Reversed and remanded.

RARICK, P.J., and GOLDENHERSH, J., concur.