Opinion filed February 22, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09—DT—145 |
| JUDY C. GEIER, | ) ) | Honorable John H. Young, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

The State charged defendant, Judy C. Geier, with driving under the influence of alcohol (DUI). 625 ILCS 5/11—501(a)(2) (West 2008). Prior to trial, defendant moved to quash her arrest and suppress evidence obtained when a sheriff's deputy stopped her vehicle. The trial court granted defendant's motion, and the State appeals. We reverse and remand.

I. BACKGROUND

On May 16, 2009, at about 10 p.m., defendant, age 68, was arrested by Boone County Sheriff's Deputy Adam Stark. On the same day, she was charged with DUI and issued a notice of summary suspension of her driver's license (for 12 months). 625 ILCS 5/11—501.1 (West 2008). The traffic citation describes the road conditions as dry with clear visibility.

On June 4, 2009, defendant petitioned to rescind the statutory summary suspension (625 ILCS 5/2—118.1 (West 2008)), alleging that Stark stopped her vehicle without reasonable grounds to believe that she was operating her vehicle while under the influence of alcohol. On August 19, 2009, following a hearing, the trial court granted defendant's petition. It found that Stark did not have sufficient cause to effect a traffic stop.

On September 23, 2009, defendant moved to quash her arrest and suppress evidence, arguing that the officer lacked probable cause to make the initial stop of her vehicle prior to her arrest. On November 23, 2009, a hearing was held on defendant's motion. Defendant called Stark. Stark testified that, at 9:55 a.m. on May 16, 2009, he was on duty, traveling south on Route 76. As he approached Woodstock Road, he observed defendant's silver Chevy Blazer a little more than a quarter-mile away on Woodstock Road. The vehicle was moving "a little fast" as it approached the intersection, and it abruptly stopped at the intersection, which was controlled by a stop sign and situated on a downhill curve.

After the vehicle stopped, it turned left onto southbound Route 76. Stark then observed the vehicle cross over the white fog line on the right-hand side of the road. At one point, all four tires passed over the fog line. The vehicle next turned right onto Spring Creek Road. Stark observed no problems with that turn. The vehicle then turned north onto Riverside Road. It continued to travel within its lane. However, after the vehicle passed Olson Road, the vehicle's left front wheel crossed over the center line. When asked whether the tire completely crossed over the center line, Stark replied, "I don't really recall. I remember it's a double line there. I know it crossed over at least the one." At this point, Stark stopped defendant's vehicle.

Stark testified that the distance between Woodstock and Olson Roads is about two miles but that it could be four or five miles. Addressing the vehicle's driving speed, Stark explained that he could not "run any radar on it" because his vehicle was also moving; however, when his vehicle kept the same pace as defendant's vehicle, it exceeded the speed limit. He was trying to catch up to defendant's vehicle.

Stark stated that, when he first observed defendant's vehicle, *i.e.*, as it approached the stop sign at Woodstock Road and Route 76, Stark slowed down. Thereafter, he tried to catch up to defendant's vehicle. He had not caught up to defendant's vehicle before he reached Spring Creek Road, but had caught up to it by the time it reached Riverside Road.

Stark did not issue defendant a ticket for crossing the center line (after her vehicle passed Olson Road while on Riverside Road), but he did ticket her for driving over the fog line. 625 ILCS 5/11—709(a) (West 2008) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). Addressing why he did not pull over defendant between Spring Creek and Olson Roads, Stark testified that there is no safe place to stop a car in that area; there are curves and hills. He was concerned for both defendant's and his own safety. "The rest of the time I was trying to catch up to her, and I am not going to put on my—my take down lights when there's a number of—space in between us." Stark stated that he preferred to have a short distance in front of him because, if a car is too far ahead, the driver does not necessarily know that the officer is trying to effect a stop. Stark conceded that the shoulder on southbound Route 76 is the width of a car. Stark stated that, on southbound Route 76 toward Woodstock Road, the road slopes down a hill.

The road also curves to the west, with Caledonia Road crossing Route 76 at an angle. The intersection of Caledonia Road and Route 76 is also at a curve.

The State presented no witnesses. Following arguments, the trial court granted defendant's motion to quash and suppress. The court first noted its familiarity with *People v. Leyendecker*, 337 Ill. App. 3d 678 (2003) (affirming granting of motion to suppress where vehicle momentarily crossed fog line for about one foot around a curve and with poor visibility), which defendant's counsel had cited. The court found that defendant crossed the fog line at Woodstock Road and Route 76 and, therefore, violated the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—709(a) (West 2008)). However, addressing probable cause, the court found that there were between two and four miles from the point of the violation to where Stark stopped defendant. The court stated that the testimony showed that defendant's vehicle passed several intersections before Stark stopped her. The court found that Stark was credible but did not have probable cause to stop defendant. The court stated that a "significant" factor in its ruling was that Stark delayed in pulling over defendant's vehicle:

> "Clearly, there's a [section 11—709] violation that he observes at the corner of Woodstock and 76. However, what I find to be defective for the probable cause is that I think he could have—and although he's testified very articulately and *credibly* he didn't feel it was safe until he did it, I would note that it's at least two miles and probably further. He indicated it could have possibly been as much as four, but it's almost to the county line.
>
> And that's what I find and why I'm granting the motion to suppress the evidence is that if in fact he was going to pull the car over, the defendant over for that violation, I think he could have done it a lot, lot sooner than at the corner of Riverside and Olson." (Emphasis added.)

The State moved to reconsider, arguing that a peace officer is not required to effect a traffic stop immediately after witnessing a traffic violation and that there is no requirement that a peace officer issue a traffic ticket on the same day as the cited offense. On January 13, 2010, a hearing was held on the State's motion. The trial court denied the motion, reiterating its prior findings and stating that Stark waited too long to issue the ticket. It further found that Spring Creek Road is a major thoroughfare through the county. "There could have been a place to stop. If that was really his reason to do it, he should have done it before that."

The State filed a certificate of impairment and appealed pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006).

## II. ANALYSIS

The State argues that the trial court erred in granting defendant's motion to quash and suppress. In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). First, a trial court's findings of historical fact are reviewed only for clear error, and we give due weight to any inferences the court draws from those facts. *Id.* Further, we reverse those findings only if they are against the manifest weight of the evidence. *Id.* Second, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Id.* at 542-43.

Preliminarily, the State requests that we review *de novo* the court's factual findings, because Stark was the only witness to testify and because "the trial court did not express any doubts or concerns about his credibility as a witness." We reject the State's request. We do not apply *de novo* review merely because the court found that a witness was credible. In the cases upon which the State relies, the reviewing courts applied *de novo* review because there was no credibility challenge. See

*People v. Carrera*, 321 Ill. App. 3d 582, 588-89 (2001) (*de novo* review appropriate where the defendant relied only on uncontested facts—citing only officers' testimony and not challenging officers' credibility), *aff'd*, 203 Ill. 2d 1 (2002); *People v. F.J.*, 315 Ill. App. 3d 1053, 1056 (2000) (*de novo* review appropriate where parties accepted officer's testimony); *People v. Martinez*, 307 Ill. App. 3d 368, 371 (1999) (*de novo* review appropriate where officers' testimony was uncontradicted and their credibility was not challenged). Here, in contrast, the court explicitly addressed Stark's credibility, finding him a credible witness, after defendant had challenged Stark's credibility (by arguing that road conditions were such that Stark could have pulled over defendant earlier than he did).

Turning to the merits, the State argues that the trial court erred in granting defendant's motion to quash and suppress. A warrantless arrest is valid only if supported by probable cause. *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986). Probable cause for an arrest exists when the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. *People v. Johnson,* 368 Ill. App. 3d 1073, 1081 (2006). Probable cause does not demand a showing that the belief that the suspect has committed a crime be more likely true than false. *People v. Wear,* 229 Ill. 2d 545, 564 (2008). Thus, the existence of possible innocent explanations for the individual circumstances or even for the totality of the circumstances does not necessarily negate probable cause. See *People v. Schmitt*, 346 Ill. App. 3d 1148, 1153 (2004) (" 'In making a determination of probable cause[,] the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' ") (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n.13 (1983)).

An officer's observation of a traffic violation is sufficient to provide the officer with probable cause to arrest a defendant for the violation, and, thus, a stop is proper. See *People v. Smith*, 172 Ill. 2d 289, 297 (1996) (further noting that, given that officer had probable cause, court need not consider officer's reasonable articulable suspicions surrounding the defendant's conduct).

Here, the State challenges two aspects of the trial court's ruling, asserting that the court erred by: (1) relying on *Leyendecker*, because that case is distinguishable and limited to its unique facts; and (2) not placing more weight on Stark's assessment of the circumstances surrounding his delay in effectuating a stop. For the following reasons, we agree with the State's assertion that the court erred in granting defendant's motion.

As to the State's first claim, the record is not clear whether the trial court actually relied on *Leyendecker* or merely acknowledged the case. Nevertheless, we briefly review it. In *Leyendecker*, the defendant was charged with driving while her license was suspended, and she moved to suppress the fruits of the stop, arguing that the police did not have a reasonable suspicion that she had committed a traffic offense—a single, momentary crossing of the fog line—prior to stopping her vehicle. At the hearing on her motion, the only witness, a deputy sheriff, testified as follows. At mid-afternoon, he was stationed at the bottom of a hill, observing traffic on Route 20, a two-lane, two-way roadway in Jo Daviess County. He observed the defendant's vehicle traveling east. The deputy followed the vehicle for about two miles, at an interval of three-to-four car lengths. As the defendant maneuvered her car up a hill and through a curve to the left, the deputy observed it cross the fog line by a width of one foot. The speed limit was 65 miles per hour, the road had many curves, and visibility was poor around the curves. After he stopped the defendant, she told the deputy that her

license was suspended. The deputy issued her a ticket for this violation but did not issue her a traffic citation for crossing the fog line. The trial court granted the defendant's motion to suppress.

On appeal, a Second District majority affirmed. *Leyendecker*, 337 Ill. App. 3d at 684. The State had argued that the defendant's crossing of the fog line gave the deputy reasonable suspicion that the defendant had violated the Vehicle Code. *Id.* at 682. We noted that the inquiry was whether the deputy had a reasonable suspicion that the defendant had crossed over the line *and* that she was not driving as nearly as practicable within one lane. *Id.* We further noted that the deputy had not testified as to whether the defendant was driving as nearly as practicable within one lane when she momentarily crossed the fog line. *Id.* However, he did testify that she crossed the fog line as she was maneuvering her vehicle through a curve to the left and that the road had poor visibility around the curves. *Id.* Further, he testified that, other than the momentary crossing of the fog line, the defendant had driven properly during the two miles that he followed her vehicle. *Id.* We also noted that the record did not contain a traffic citation for the defendant's crossing the fog line. *Id.* at 683. Based on this evidence, we held that a reasonable person would not suspect that the defendant was not driving as nearly as practicable within her lane. *Id.*

The dissent, relying on the statute's requirement that a motorist " 'drive a vehicle as nearly as practicable entirely within one lane,' " disagreed with the majority's conclusion that the road's hilliness or curviness made it impracticable to drive entirely within one lane. *Id.* at 684 (Callum, J., dissenting). According to the dissent, the term "practicable" means " 'what may be done, practiced, or accomplished; that which is performable, feasible, [or] possible.' " *Id.* (quoting Black's Law Dictionary 1172 (6th ed. 1990)). The dissenting justice posited that, had the defendant crossed the fog line to avoid an obstruction in the lane, such as a boulder or an animal, he would hold that she

drove as nearly as practicable entirely within the lane. *Id.* at 684-85. However, while conceding that hilly/curvy road conditions and poor visibility might have rendered more *difficult* the task of driving entirely within the lane, the dissent argued that they did not make the task *impossible. Id.* at 685. "Indeed, to drive entirely within the lane, all defendant had to do was drive more carefully." *Id.*

We agree with the State that, to the extent the trial court here relied on *Leyendecker*, it erred in doing so, because that case is distinguishable. Here, defendant's driving error—all four wheels of her vehicle crossed the fog line—was far more egregious than the error that occurred in *Leyendecker*—a momentary crossing, by a width of one foot, of the fog line while maneuvering in a 65-mile-per-hour zone into a curve. In this case, there were no special conditions such as the poor visibility in *Leyendecker* that would have accounted for defendant's driving error. Although Stark testified that the approach to the Woodstock Road and Route 76 intersection is a downhill curve, he stated that defendant's vehicle crossed over the fog line after she stopped at the intersection, and he wrote in the DUI citation that the road conditions were dry with clear visibility. Finally, unlike in *Leyendecker*, Stark testified that defendant's vehicle crossed over at least one of the roadway's center lines.

Turning to the State's second claim, the State argues that, although the trial court expressed no concern as to Stark's credibility, it nevertheless appeared to disregard his explanation for why he did not earlier effect a stop of defendant's vehicle. In the State's view, the trial court appeared to announce a bright-line requirement for how quickly a traffic stop needs to be effected in order to be valid, while giving little or no consideration to police expertise.

As previously noted, the trial court explicitly found Stark to be a credible witness: "he's testified very articulately and credibly he didn't feel it was safe until he did it." Indeed, the court

found that defendant violated the Vehicle Code when all four tires of her vehicle crossed the fog line at Woodstock Road and Route 76. As previously noted, an officer's observation of a traffic violation is sufficient to provide the officer with probable cause to arrest a defendant for the violation, and, thus, a stop is proper. *Smith*, 172 Ill. 2d at 297. Stark testified that, after he observed a traffic violation, he followed defendant's vehicle for two to four miles before effecting the stop because he did not feel there was a safe place to stop. Nevertheless, the court found that there was *no* probable cause because, although Stark's testimony about delaying the stop was credible, Stark waited too long to stop defendant. The court did not explain how the initial probable cause dissipated merely because Stark continued to follow defendant for two to four miles after observing the traffic violation. Mere delay does not dissipate probable cause to arrest. *People v. Shepherd*, 242 Ill. App. 3d 24, 29-30 (1993) (officer's decision "not to immediately pull defendant over had no impact on the constitutionality of his pulling defendant over a few minutes later," and probable cause to stop the "defendant for failing to signal before turning did not expire (or even diminish) when he chose not to immediately stop defendant"); see also 2 Wayne R. LaFave, Search and Seizure §3.7(a), at 371 (4th ed. 2004) (probable cause to *arrest*, which is concerned with historical facts and as distinct from probable cause to *search*, which is concerned with facts relating to a presently existing condition, continues for an indefinite period unless contrary facts later come to light). Section 107—2(1)(c) of the Code of Criminal Procedure of 1963 provides that a "peace officer *may* arrest a person when" the officer "has reasonable grounds to believe that the person is committing or has committed an offense." (Emphasis added.) 725 ILCS 5/107—2(1)(c) (West 2008). This statute has been construed to mean that an officer has discretion to arrest a person "immediately, later, or perhaps never." *Shepherd*, 242 Ill. App. 3d at 29.

In light of the trial court's erroneous assessment of probable cause, we conclude that it erred in granting defendant's motion to quash and suppress.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Boone County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.