2020 IL App (1st) 18-2565-U

THIRD DIVISION
September 30, 2020

No. 1-18-2565 & 1-18-2566 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 23200 |
| | ) | |
| ANTHONY DIXON, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*: We find that postconviction counsel did not provide unreasonable assistance during second stage postconviction proceedings, but several of defendant's convictions must be vacated under the one-act, one-crime principle.

¶ 2     Following a bench trial, defendant Anthony Dixon was convicted of armed habitual criminal, four counts of unlawful use or possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon by a felon in connection with an incident where defendant was arrested after attempting to use counterfeit bills at a convenience store and found to be in possession of a firearm. The trial court sentenced defendant to a term of 6 years' imprisonment on all counts,

to run concurrently. Defendant's late notice of appeal was denied by this court on August 15, 2014.

¶ 3 In 2015, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)). The circuit court appointed counsel and docketed the petition, and counsel filed an Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) certificate and supplemental postconviction petition. The circuit court denied the State's subsequent motion to dismiss. It advanced the petition for a third stage evidentiary hearing on defendant's claims of ineffective assistance of counsel, but vacated two counts of aggravated unlawful use of a weapon by a felon. Following the evidentiary hearing, the circuit court found that defense counsel was not ineffective for failing to file a motion to quash arrest and suppress evidence, but counsel was ineffective for failing to file a notice of appeal. Defendant was allowed to file a notice of appeal from his underlying convictions and on the partial dismissal of his postconviction petition.

¶ 4 On appeal, defendant contends that (1) his postconviction counsel provided constitutionally defective representation in failing to amend his *pro se* petition to assert that his trial counsel was ineffective for not filing a motion to quash arrest and to suppress evidence, and (2) several of his convictions should be vacated under the one-act, one-crime principle. For the following reasons, we affirm the partial dismissal of defendant's postconviction petition, but vacate defendant's convictions under the one-act, one-crime rule for unlawful use of a weapon by a felony under counts 2 and 4, aggravated unlawful use of a weapon by a felon in counts 7 and 9, and unlawful use of a weapon by a felon for possessing ammunition in count 3.

¶ 5 I. BACKGROUND

¶ 6 A. Trial Proceedings

¶ 7    In December 2012, defendant was charged by grand jury indictment with armed habitual criminal for possessing a firearm having previously been convicted of robbery and unlawful use of a weapon by a felon; two counts of unlawful use of a weapon by a felon for possession of ammunition (counts 3 and 5); two counts of unlawful use of a weapon by a felon for unlawful possession of a weapon having previously been convicted of robbery (counts 2 and 4); aggravated unlawful use of a weapon in carrying a loaded, uncased weapon not on his land or abode (count 6); aggravated unlawful use of a weapon in carrying a firearm while not on his land or abode without a Firearm Owner's Identification Card (FOID) card (count 7); aggravated unlawful use of a weapon in carrying a loaded, uncased weapon on a public street (count 8); and aggravated unlawful use of a weapon in carrying a weapon on a public street without a FOID card (count 9).

¶ 8    At defendant's bench trial, the State presented the testimony of Bellwood police officer Michael Adamski and convenience store clerk Lillie Floyd. Adamski testified that on October 26, 2012, he was on routine patrol when he received a call between 2:30 p.m. and 3:00 p.m. directing him to the 2200 block of St. Charles Road in Bellwood, Illinois. He was flagged down en route by Kenneth Butler in the 2500 block of St. Charles Road, who informed him that he was the individual who called about the counterfeit bills and that the person he called about was currently entering the OJ convenience store on St. Charles Road.

¶ 9    According to Floyd, she was working the cash register at the convenience store when defendant walked in and proceeded to bring a pop, a bag of chips, and cookies to the counter. Defendant attempted to pay with a $50 bill. Floyd used a special marker on the bill to determine if it was "good" or "bad," and the marker indicated that it was "bad," or counterfeit. Floyd informed defendant of this, and he responded, "Oh, okay, I'll put my products back."

¶ 10    As defendant was putting the products back, Adamski entered the store and asked Floyd why defendant was doing this. Floyd informed Adamski that defendant had given her "bad" money. Adamski ordered defendant to the counter. Defendant did not attempt to leave or flee. Adamski conducted a pat down. As Adamski did so, he felt a large metallic object in the front of defendant's waistband that, based on his training and experience, he believed to be a pistol. Adamski handcuffed defendant and retrieved the firearm, which was a .30 caliber Luger, semi-automatic pistol. The pistol was loaded with one round in the chamber and four rounds in the magazine. Adamski also recovered from defendant two more $50 bills that were counterfeit.

¶ 11    Floyd testified that she observed the pat-down and observed that Adamski retrieved a gun and additional bills. She did not see a gun on defendant when he entered the store. She testified that when Adamski recovered the gun, defendant stated, "he put a gun on me, he put a gun on me." Although she did not see from where Adamski retrieved the gun, Adamski did not have anything in his hands when he entered the store. Adamski denied that he planted the gun on defendant.

¶ 12    Adamski transported defendant to the Bellwood police station, where he informed defendant of his *Miranda* rights and defendant signed the waiver form and agreed to speak with police. Defendant told Adamski that he obtained the firearm from a neighbor named Desi and defendant's job was to sell the gun for $500 to an individual named "Baby C." Defendant related that he would give this money to Desi and receive $50 in cash and $50 in drugs in return. Adamski testified that defendant also told him that he had "a fake 50 he was trying to use to buy items."

¶ 13    The State also entered into evidence a certified copy of defendant's prior felony robbery conviction from 1991 and unlawful use of a weapon by a felon from 2006. The State also entered

a certified copy of a FOID certificate showing defendant did not have a FOID card. The defense's motion for a directed finding was denied. In closing, the defense asserted that the police planted the gun on defendant and the State failed to prove that defendant was in possession of a gun.

¶ 14    The trial court found defendant guilty on all counts. It denied defendant's motion for a new trial. It sentenced him to concurrent terms of six years' imprisonment. As stated, this court denied defendant leave to file a late notice of appeal on August 15, 2014 (Case No. 1-14-2233).

¶ 15                    B. Postconviction Proceedings

¶ 16    On May 14, 2015, defendant filed a *pro se* postconviction petition alleging, *inter alia*, that his trial counsel was ineffective for failing to file a notice of appeal, failing to file a motion to quash arrest and suppress evidence on grounds that State did not produce the counterfeit bills at trial, and failing to file a motion to suppress defendant's statement to police (without stating a specific legal basis). The trial court appointed postconviction counsel, who then filed an Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984)) certificate and a supplemental postconviction petition in which she incorporated the *pro se* petition and additionally argued, *inter alia*, that counts six and eight for aggravated unlawful use of a weapon were void under *People v. Aguilar*, 2013 IL 112116, and that trial counsel was ineffective for failing to call witnesses to testify that the gun was inoperable and that defendant's fingerprints were not recovered from the gun and that someone else's latent fingerprints were found on the gun, and failed to research whether the gun constituted a firearm under the statute or fell within the "antique weapon" exception.

¶ 17    The State filed an answer and a motion to dismiss, in which it conceded that counts six and eight were void. At the hearing on the motion to dismiss, the court vacated counts six and

eight. The court advanced defendant's petition to a third stage evidentiary hearing to address whether defendant had received ineffective assistance of counsel.

¶ 18                    C. Postconviction Evidentiary Hearing

¶ 19        At the evidentiary hearing, defendant's postconviction counsel argued in opening that there were three main contentions at issue: (1) ineffective assistance of trial counsel for failing to test the firearm to determine whether it was an antique and thus could not support a firearm offense; (2) ineffective assistance for failing to file a motion to quash arrest and suppress evidence because police lacked reasonable suspicion to conduct a pat down of defendant in the store; and (3) ineffectiveness for failure to file an appeal.

¶ 20        Defendant's trial counsel testified that he was hired to represent defendant on two cases, one from 2011 and one from 2012, and after speaking with defendant and his wife at length, they decided that the strategy was to go to trial in the 2012 case and aim for a minimum sentence and try to beat the 2011 case. Trial counsel testified that in preparation for trial, he reviewed all police reports, sent an investigator to interview the store clerk, and reviewed his notes from his conversations with defendant. Trial counsel testified that he advised defendant to plead guilty to the 2012 case, but defendant insisted on going to trial. Counsel testified that he reviewed the case records with defendant numerous times.

¶ 21        Trial counsel testified that based on his review of the police report and other information he received, he believed defendant was in custody at the time the officer patted him down. He testified that he did not file a motion to quash because he "didn't think it was a valid motion" based on his investigation and the police reports, as the clerk and police reports indicated that police were called to the scene, the clerk "complained that this individual *** had passed a phony $50 bill. The police detained him. And, when he was detained, they pat him down."

Counsel testified that their trial strategy was to argue that defendant did not have possession of the gun; it was defendant's decision to pursue this strategy and against counsel's advice. Counsel testified that a motion to suppress would have been irrelevant to this strategy. He did not call as a witness the person who tested the gun for fingerprints because defendant's fingerprints were not found on the gun. He did not admit any evidence regarding whether the gun was an antique, although he did mention this in closing and researched the definition of a firearm and whether it was operable or inoperable.

¶ 22        According to trial counsel, he spoke with defendant numerous times about filing a notice of appeal, but defendant told him he did not want to file one because he had received the minimum sentence. Counsel testified that his notes reflect that defendant did not want to file a notice of appeal. However, counsel conceded that he previously misspoke when he told the court that he thought he had filed a notice of appeal.

¶ 23        Defendant testified at the hearing that he told his trial counsel that he wanted to file an appeal after he was convicted and after he was sentenced. He testified that he also told his counsel that he had an old gun in his pocket that did not work.

¶ 24        Following this testimony, postconviction counsel and the State presented arguments. In discussing defendant's claim regarding the motion to quash, the circuit court noted that a motion to quash arrest would have been denied because there was probable cause to arrest defendant, and regardless of whether the police handcuffed him, the police had the right to pat him down. The circuit court stated that it was not a mere *Terry* stop as there was a 911 call, the store clerk informed the officer that defendant just gave her counterfeit money to purchase items and gave the police the counterfeit bill, and the officer ordered defendant to the counter and patted him down; thus, "for all intents and purposes he's under arrest. If you were to present that motion, my

question would be is there probable cause to place him under arrest at that point in time. Fake money. He gave it to me. That's enough to place him under arrest." The court further observed as to the motion to quash issue that "trial strategy exists. I *** would have thought that he was under arrest at the time they came in, and he said this guy just gave me bad money. He's under arrest. And they could have patted him down. I don't think that was simply a *Terry* stop."

¶ 25    The circuit court subsequently found that defendant was deprived of his right to file an appeal, but that trial counsel was not ineffective as to the remainder of his representation of defendant, noting that it "didn't think that a motion to suppress was necessarily going to prevail."

¶ 26    Defendant's postconviction counsel then filed a notice of appeal from his 2012 conviction and from the partial dismissal of defendant's postconviction petition, and the two cases were consolidated on appeal.

¶ 27                                II. ANALYSIS

¶ 28                 A. Ineffective Assistance of Postconviction Counsel

¶ 29    In appealing from the third stage partial dismissal of his postconviction petition, defendant contends that his postconviction counsel rendered ineffective assistance during second stage proceedings because she failed to amend his *pro se* postconviction petition with certain claims. Defendant asserts that postconviction counsel should have amended his *pro se* allegation that his trial counsel was ineffective for not filing a motion to quash arrest and to suppress evidence. Defendant argues that counsel should have added that such motion would have successfully suppressed the gun evidence and defendant's statement to the police because the police lacked probable cause that defendant had the intent to defraud when he used a counterfeit bill, and the police lacked reasonable grounds to pat him down. As defendant asserts, the cause should be remanded for further second stage proceedings on this issue.

¶ 30      The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a statutory remedy for criminal defendants to collaterally attack their convictions on grounds that their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act outlines a three-stage process. *People v. Cotto*, 2016 IL 119006, ¶ 26. The first stage determines whether the petition is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).

¶ 31      If a defendant's pro se petition survives the first stage, the petition advances to the second stage, which tests the legal sufficiency of the petition. *Cotto*, 2016 IL 119006, ¶ 26. At that time, the circuit court may appoint counsel for an indigent defendant and appointed counsel may amend the *pro se* petition. *Id.* ¶ 27; 725 ILCS 5/122-4 (West 2014). The State may answer the petition or move to dismiss it, at which point the circuit court may either grant the motion to dismiss, or allow the petition to advance to a third stage evidentiary hearing. *People v. Dupree*, 2018 IL 122307, ¶ 28. The petition and accompanying documentation must make a substantial showing of a violation of the defendant's constitutional rights in order to advance to an evidentiary hearing. *People v. Domagala*, 2013 IL 113688, ¶ 33. At this stage, the petitioner's allegations are taken as true unless affirmatively refuted by the record. *Id.* ¶ 35. If the defendant makes a substantial showing of a constitutional violation at the second stage, the petition advances to a third stage evidentiary hearing, wherein the circuit court serves as a finder of fact in determining witness credibility and the weight of the evidence. *Id.* ¶ 34. In the third stage, the petitioning defendant bears the burden of showing a denial of a constitutional right by a preponderance of the evidence. *People v. Coleman*, 2013 IL 113307, ¶ 92.

¶ 32      A defendant's right to postconviction counsel is statutory; accordingly, he is only entitled to a "reasonable" level of assistance. *People v. Owens*, 139 Ill. 2d 351, 359 (1990). Illinois

Supreme Court Rule 651(c) governs appeals in postconviction proceedings and "imposes three duties on appointed postconviction counsel." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18 (citing Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)). Under this rule:

> "either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations; (2) examined the record of the trial proceedings; and (3) made any amendments to the filed *pro se* petitions necessary to adequately present the petitioner's contentions." *Id.* (citing Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)).

¶ 33      The rule aims to ensure that postconviction counsel shapes the petitioner's *pro se* claims into proper legal form for presentation to the court. *Id.* "Substantial compliance with Rule 651(c) is sufficient." *Profit*, 2012 IL App (1st) 101307, ¶ 18. To that end, filing a Rule 651(c) certificate "gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance." *Id.*

¶ 34      "Whether postconviction counsel provided a reasonable level of assistance is compliance with Supreme Court Rule 651(c) is reviewed *de novo*." *People v. Suarez,* 224 Ill. 2d 37, 41-42 (2007). To the extend defendant's argument focuses on the second stage proceedings in this case, a circuit court's dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*." *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10.

¶ 35      Underlying his claim that postconviction counsel provided unreasonable assistance, defendant claims that his trial counsel rendered constitutionally deficient assistance in failing to file a motion to quash arrest and suppress evidence. To establish this claim, defendant must show that counsel's performance was constitutionally deficient and that there is a reasonable

probability that counsel's errors prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both prongs must be satisfied to prevail. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). "To establish prejudice for counsel's failure to file a motion to suppress, a defendant must show a reasonable probability that (1) the motion would have been granted and (2) the outcome of the trial would have been different had the evidence been suppressed." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 38.

¶ 36    In the present case, postconviction counsel filed a Rule 651(c) certificate. Specifically, postconviction counsel stated in the certificate that she consulted with defendant by phone and email to discuss his claims; that she examined the report of proceedings, common law record, and supplemental records; that she examined defendant's *pro se* petition; and that she determined it was necessary to file a supplemental petition. She then filed a supplemental petition expanding upon defendant's claims and raising several additional claims. Therefore, we presume that defendant received proper representation under the rule, and defendant bears the burden of overcoming this presumption to show that counsel failed to substantially comply with her duties under the rule. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 37    As stated, defendant's *pro se* postconviction petition alleged *inter alia*, that his trial counsel was ineffective for failing to file a notice of appeal, failing to file a motion to quash arrest and suppress evidence on grounds that State did not produce the counterfeit bills at trial, and failing to file a motion to suppress defendant's statement to police (without stating a specific legal basis). On appeal, defendant argues that his postconviction counsel rendered deficient assistance in failing to amend his petition to argue that trial counsel was ineffective for failing to file a motion to quash on grounds that police lacked probable cause that he had intent to defraud when he used the counterfeit bill and lacked reasonable grounds to pat him down. However,

defendant "cannot successfully maintain that postconviction counsel rendered deficient assistance in failing to raise" these issues because " '[p]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims.'" *Id.* (quoting *Davis,* 156 Ill. 2d at 164). "In that regard, Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Id.* at 475-76 (quoting *Davis,* 156 Ill. 2d at 164). "While postconviction counsel *may* conduct a broader examination of the record [citation], and may raise additional issues if he or she so chooses, there is no obligation to do so." *Id.* at 476.

¶ 38        Thus, postconviction counsel was under a duty to properly present only *petitioner's* claims, a duty which she fulfilled here in the supplemental petition. In his *pro se* petition, defendant did not raise the particular claim that the police lacked probable cause to arrest him because of lack of intent to commit forgery in possessing the counterfeit bills or that the police lacked reasonable suspicion to pat him down. Moreover, it is clear from the record that counsel thoroughly examined defendant's trial record, consulted with defendant, researched legal issues, and made any necessary amendments to his petition to adequately present his claims. She also presented arguments before the circuit court against the motion to dismiss and in connection with the third stage evidentiary hearing, where she examined witnesses and presented opening and closing arguments. We further observe that defendant's contention on appeal that postconviction counsel should have argued that he lacked the intent to defraud when he possessed the counterfeit bill directly contradicted defendant's assertion in his *pro se* petition that trial counsel should have filed a motion to quash because the State failed to show he possessed any counterfeit bills because the State failed to produce the counterfeit bills at trial. As such, it was not

unreasonable for postconviction counsel to avoid taking contradictory positions regarding possession of the counterfeit bills.

¶ 39    Defendant argues that counsel's failure to amend the petition requires a remand regardless of the merits of the additional claims he believes should have been added to the petition because he is not required to show prejudice at this stage. *People v. Russell,* 2016 IL App (3d) 140386, ¶¶ 8-11 (Failure of postconviction counsel to make "routine" ineffective assistance of appellate counsel argument in order to avoid waiver of issue preserved at trial rebutted the presumption of reasonable assistance created by filing Rule 651(c) certificate, regardless of the merits of the issue).

¶ 40    The State contends that because counsel complied with Rule 651(c) at the second stage and the cause advanced to the third stage, Rule 651(c) no longer applies and, therefore, the general standard of reasonableness applies and defendant must show postconviction counsel's failure to amend the petition regarding the motion to quash caused defendant prejudice.

¶ 41    We agree that Rule 651(c) applies only to second stage postconviction proceedings and does not apply to third stage postconviction proceedings. "Rule 651(c) does not apply once a postconviction petition has been advanced to the third stage." *Pabello*, 2019 IL App (2d) 170867, ¶ 27 (citing *People v. Marshall*, 375 Ill. App. 3d 670, 681-82 (2007)). Counsel at the third stage does not have to further comply with the rule and instead "argues the merits of the petition as formulated during the second stage." *Id.* However, defendant's contention is not that counsel failed to comply with Rule 651(c) once the cause advanced to the third stage. Rather, defendant contends that counsel failed to amend the petition at the second stage to add his probable-cause claims.

¶ 42        In that regard, our supreme court "has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit." *Suarez*, 224 Ill. 2d 37, 47 (2007). "While there is no requirement that post-conviction counsel must amend a petitioner's *pro se* postconviction petition, Rule 651(c) requires that appointed postconviction counsel make any amendments that are necessary for an adequate presentation of petitioner's contentions." *Russell,* 2016 IL App (3d) 140386, ¶ 10 (citing *People v. Turner,* 187 Ill.2d 406, 412 (1999)). "However, if amendments to a *pro se* petition would only further a frivolous or patently nonmeritorious claim they are not necessary within the meaning of Rule 651(c)." *Id.* (citing *People v. Greer,* 212 Ill.2d 192, 205 (2004)).

       "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule. Moreover, the mere filing of an amended petition by counsel under such circumstances would appear to violate the proscriptions of Supreme Court Rule 137." *Greer*, 212 Ill. 2d at 205.

¶ 43        Here, the arguments defendant contends should have been added to his petition would have been nonmeritorious. Defendant asserts that the police lacked probable cause to arrest him because his mere possession of the counterfeit bill was insufficient to show he had intent to defraud. It is well-settled that a warrantless arrest must be supported by probable cause. *People v. Geier*, 407 Ill. App. 3d 553, 557 (2011). "Probable cause for an arrest exists when the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would

believe that the suspect is committing or has committed a crime." *Id.* Probable cause does not require that the officer's belief that the suspect committed a crime be more likely true than false. *Id.* "Thus, the existence of possible innocent explanations for the individual circumstances or even for the totality of the circumstances does not necessarily negate probable cause." *Id.*

¶ 44    The offense of forgery requires a showing that "a person, with intent to defraud, knowingly makes, alters, issues, delivers, or possesses with intent to deliver, a document apparently capable of defrauding another in such a manner that it purports to have been made by another." *People v. Carr*, 225 Ill. App. 3d 170, 176 (1992). "Intent to defraud may be inferred from the facts and circumstances surrounding the transaction, and if the forged document is delivered, then this intent will be presumed." *Id.*

¶ 45    Here, as the circuit court highlighted during postconviction proceedings, there was no question that the evidence showed Adamski had probable cause to arrest defendant based on forgery. Adamski received a 911 call regarding an individual attempting to use a counterfeit bill. When he proceeded to that location, the caller informed him that the individual was now trying to pass counterfeit bills at the OJ convenience store. Adamski then entered the store and observed that defendant was walking back and forth from the counter returning items he had tried to purchase. Adamski asked the store clerk, Floyd, why defendant was doing this, and she informed him that defendant gave her a counterfeit $50 bill and she told him to return the items. Under the totality of the circumstances, Adamski had probable cause to believe that defendant had committed forgery when he then detained him, patted him down, and arrested him.

¶ 46    Although defendant argues that Adamski could not have a reasonable belief that defendant had the intent to defraud, when assessing intent, the court considers the totality of the circumstances "surrounding (1) the arrest of a defendant, (2) the defendant's possession of the

counterfeit bills, and (3) the possession of any other evidence discovered as a result of searches conducted by the law enforcement officials incident to that arrest." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 25. Adamski was informed that defendant first attempted to pass counterfeit money with Butler, then with Floyd in the convenience store. Not only did defendant possess the counterfeit bills, but he twice attempted to use them and he was apprehended while trying to use them in a retail transaction. Adamski also found two more counterfeit bills on defendant's person. The totality of the facts show that defendant had the intent to defraud and Adamski had probable cause to arrest defendant.

¶ 47     Accordingly, Adamski was justified in conducting the pat-down search of defendant incident to that arrest and seizure of the gun was lawful. See *People v. Tillman*, 355 Ill. App. 3d 194, 200 (2005) ("A search incident to a valid arrest is proper if the search is conducted either contemporaneously or immediately prior to the arrest.") As the circuit court observed, this was not merely a *Terry* stop; rather, it was a search incident to a lawful arrest, which is a well-established exception to the limitation under *Terry*. *People v. McKinney*, 274 Ill. App. 3d 880, 888 (1995). Adamski's search incident to arrest required no additional justification, and could be for purposes of not only officer safety, but to discover other items used in commission of a crime. *People v. Hoskins*, 101 Ill. 2d 209, 216 (1984); 725 ILCS 5/108-1 (West 2012).

¶ 48     Significantly, postconviction counsel did, in fact, expand upon defendant's claim that there should have been a motion to quash arrest and suppress evidence during the third stage proceedings. Postconviction counsel argued extensively before the circuit court and examined witnesses at the hearing on the issue of whether trial counsel was ineffective for failing to file a motion to quash on grounds that the police lacked reasonable suspicion to pat defendant down. Trial counsel testified that he did not believe a motion to quash would have been a valid motion

based on his investigation of the case – including review of the police reports and interview of the store clerk. The circuit court directly addressed this issue several times during the third stage proceedings and stated that such a motion would have been meritless, as the police had probable cause to arrest defendant based on the facts and circumstances presented. As such, the record supports that both postconviction counsel and the circuit court gave these issues a full vetting during the postconviction proceedings.

¶ 49    Accordingly, the record demonstrates that postconviction counsel adequately fulfilled her duties of providing reasonable assistance to defendant during the second stage postconviction proceedings in ensuring his claims were properly presented to the court and, as necessary, expanding upon and adding her own additional claims. Defendant has not overcome the presumption that his postconviction counsel provided a reasonable level of assistance as required by the Act. We affirm the partial dismissal of his postconviction petition.

¶ 50                          B. One-Act, One-Crime Rule

¶ 51    Defendant next contends that, under the one-act, one-crime rule, the trial court should have merged his conviction for count 5 (unlawful use of a weapon by a felon) into count 3 (unlawful use of a weapon by a felon) as they were both based on possession of ammunition. Additionally, defendant asserts that the trial court should have merged counts 2 and 4 (unlawful use of a weapon) and counts 7 and 9 (aggravated unlawful use of a weapon) into count 1, as they were all based on possession of a firearm.

¶ 52    The State agrees that defendant's convictions for armed habitual criminal in count 1, unlawful possession of a weapon by a felon in counts 2 and 4, and aggravated unlawful possession of a weapon in counts 7 and 9, arose from the same act of possession of a single handgun on a single occasion, and therefore only his most serious conviction (armed habitual

criminal) should stand under the one-act, one-crime rule. However, the State argues that the cause should be remanded with regarding to counts 5 and 3 because it is unclear which is the most serious offense, and the trial court should determine this issue.

¶ 53       Under the one-act, one-crime rule, a defendant may not be convicted of multiple offenses when the convictions are based on precisely the same physical act. *People v. Johnson,* 237 Ill. 2d 81, 97 (2010). Where multiple convictions based on one act are improperly entered, the convictions for the less serious offenses must be vacated, leaving only the most serious conviction. *People v. Garcia*, 179 Ill. 2d 55, 71 (1997).

¶ 54       Defendant concedes that he failed to object to these errors, but argues that this court may review this issue because violation of the one-act, one-crime rule violates substantial rights. *People v. Smith*, 183 Ill. 2d 425, 430 (1998); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The State agrees that this issue has been forfeited, but that this court may review it under the second prong of the plain error doctrine. *People v. Clark*, 2016 IL 118845, ¶ 45; *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 55       We note that defendant did not raise this issue in his postconviction petition. Generally, a defendant may not raise an issue for the first time on appeal from the dismissal of a postconviction petition. *People v. Jones,* 211 Ill. 2d 140, 148 (2004). See *People v. Cathey*, 2012 IL 111746, ¶ 21 (issues to be reviewed in postconviction proceedings must be presented in the petition filed with the circuit court). Our supreme court has concluded that multiple convictions erroneously imposed in violation of the one-act, one-crime rule are voidable, not void. *People v. Davis,* 156 Ill. 2d 149, 157-58 (1993). The rule allowing courts to address void orders at any time does not apply to voidable orders. *People v. Bailey,* 2014 IL 115459, ¶ 12. Unlike the supreme court, this court does not possess the "supervisory authority, to excuse, in the context

of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition." *People v. Jones,* 213 Ill. 2d 498, 508 (2004). See *People v. Garry*, 2017 IL App (4th) 150373, ¶¶ 34-37 (declining to consider, under Illinois Supreme Court Rule 615(b), the defendant's forfeited one-act, one-crime claim raised for the first time on appeal from the denial of his section 2-1401 petition, and acknowledging that the appellate court lacks authority to merge any of his convictions under *Davis*, Rule 615, or any other supervisory authority).

¶ 56        However, because defendant filed a notice of appeal from not only the partial dismissal of his postconviction petition, but also directly from his trial, we find that we may properly review this claim under the plain error standard. *Clark*, 2016 IL 118845, ¶ 45.

¶ 57        Defendant was convicted in count 1 of armed habitual criminal for possessing a firearm after having previous convictions for robbery and unlawful use of a weapon. He was convicted in counts 2 and 4 with unlawful use of a weapon by a felon based on possession of the same firearm and while having a prior robbery conviction. He was convicted in counts 7 and 9 of aggravated unlawful use of a weapon based on possession of the same firearm and failing to have a valid FOID card. In counts 3 and 5, defendant was convicted of unlawful use of a weapon by a felon for possessing ammunition while having a prior conviction of robbery. He was sentenced to 6 years' imprisonment for each of these counts, to be served concurrently.

¶ 58        Because counts 1, 2, 4, 7, and 9 all arise from the same act of possession of a single firearm on a single occasion, the one-act, one-crime rule requires that his conviction for the most serious offense, armed habitual criminal in count 1, should stand, and his convictions in counts 2, 4, 7, and 9 be vacated. *Garcia*, 179 Ill. 2d at 71. See *People v. Gomez*, 2018 IL App (1st) 150605, ¶36 (holding that convictions for armed habitual criminal and aggravated unlawful use

of a weapon violated the one-act, one-crime rule, and that the more serious Class X offense of armed habitual criminal should stand and the less serious Class 2 offense of aggravated unlawful use of a weapon should be vacated); *People v. Bailey*, 396 Ill. App. 3d 459, 465 (2009) (vacating conviction for unlawful use of a weapon where it was based on possession of the same firearm as conviction for armed habitual criminal).

¶ 59       Concerning counts 3 and 5, defendant was convicted of unlawful use of a weapon by a felon for possessing ammunition while having a prior conviction of robbery. See 720 ILCS 24-1.1 (West 2012). The State argues that the cause should be remanded to determine which offense is the more serious offense. See *People v. Artis*, 232 Ill. 2d 156, 170 (2009) ("when it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination"). "In determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense. [Citation] In doing so, a court relies on the plain language of the statutes to determine which offense is more serious; common sense dictates that the General Assembly would mandate greater punishment for offenses it deems more serious." *Artis*, 232 Ill. 2d at 170. "[I]n situations where the degree of the offenses and their sentencing classifications are identical, this court has also considered which of the convictions has the more culpable mental state." *Id.* at 170-71. Here, in count 5, the State sought to sentence defendant as a Class 2 offender for having a prior conviction under section 24-1.1.  720 ILCS 24-1.1(e) (West 2012). A first offense under this section, as defendant was charged in count 3, is charged as a Class 3 offense. 720 ILCS 24-1.1(e) (West 2012). Accordingly, we conclude that count 5 was the more serious offense at it was charged as a Class 2 offense instead of a Class 3 offense, and we vacate defendant's conviction under count 3. *Garcia*, 179 Ill. 2d at 71.

¶ 60       Accordingly, pursuant to Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), we order defendant's *mittimus* to be corrected to reflect a single conviction for armed habitual criminal under count 1 and unlawful use of a weapon by a felon for possessing ammunition under count 5.

¶ 61                                III. CONCLUSION

¶ 62       For the reasons explained above, we affirm defendant's armed habitual criminal and unlawful use of a weapon by a felon convictions in counts 1 and 5, and the partial dismissal of his postconviction petition.

¶ 63       Affirmed.